Louis Henry VINSTON *v.* STATE of Arkansas

CR 81-72                              625 S.W. 2d 533

Supreme Court of Arkansas
Opinion delivered December 21, 1981

*McArthur & Lassiter, P.A.*, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Louis Henry Vinston was one of three men suspected of participating in an armed robbery of Henshaw Jewelry, a small shop located in the Park Plaza Shopping Center in Little Rock, Arkansas. Late in the afternoon of October 30, 1980, two men, one black and one white, armed with pistols, forced the owners of the store, Mr. and Mrs. Henshaw, into a back room and proceeded to empty the display cases of jewelry and steal other valuable property in the store. During the course of the robbery, a white accomplice entered the store. It was estimated that the jewelry stolen was worth about $30,000 and the scrap gold taken was worth $36,000. Vinston was convicted of aggravated robbery and theft and sentenced to fifty years imprisonment for the robbery and twenty years for the theft. His sentences were enhanced because of four or more prior convictions.

Vinston's arguments of error on appeal relate to search and seizure, his identification, the validity of a search warrant, and the chain of custody regarding items taken

from his vehicle. We find no merit to these arguments and affirm his convictions.

On Thursday afternoon, the 30th of October, 1980, Ralph Jones, the supervisor of the power plant at the shopping center, noticed suspicious conduct by two white males and one black male. He had been alerted earlier by a restaurant owner in the shopping center to be on the lookout for thieves who were stealing meat from the restaurant. The three men first drove up in a Buick automobile, parked, went into the shopping center, came out ten minutes later and left. Twenty minutes later all three returned in a Ford LTD automobile being driven by the black man. The three men got out of the car carrying green plastic bags. One of the white men returned to the Ford and left. Jones wrote down the license numbers and a description of both the Buick and the Ford on a scrap of paper. About the Ford he wrote: ELP 871, LTD Four Door, 1977. Jones could not say which store the men entered.

During this period of time Henshaw's jewelry store was robbed. According to the Henshaws the robbers stayed for about fifteen minutes, none of them had masks on, and the store was well lit. After the robbery the Henshaws called the police. The next morning Jones, the plant supervisor, called the police and gave them a description of the vehicles that he had seen and related what he had observed. That same morning at 8:30 a detective took six photographs of black men to the Henshaws and both of them identified Vinston as one of the robbers.

The police learned that the Ford LTD automobile described by Jones belonged to Vinston. Based on all this information a warrant was obtained for Vinston's arrest and two detectives proceeded to the L & S Garage on Mabelvale Pike that Vinston owned an interest in. The two detectives arrested Vinston at the garage at 11:00 a.m., October 31, 1980, and seeing his vehicle decided that it should be seized to prevent removal or destruction of any evidence or contraband.[1] It was seized and towed to a lot used by the

[1]The exact location of the vehicle is not in the record. It was at the garage, but whether it was on the public street or in a parking lot or space we cannot say.

police for such vehicles. Three days later, on Monday, a search warrant was obtained for the Ford automobile. The trunk contained a shoulder holster, and numerous watches, rings and bracelets.

The day that Vinston was arrested the Henshaws and two other witnesses viewed a lineup and the Henshaws identified Vinston positively as one of the robbers.

Vinston argues on appeal that the seizure of his vehicle was unreasonable and was, therefore, in violation of the fourth amendment to the United States Constitution. We disagree.

The State had the burden of justifying the warrantless seizure of the vehicle. *Cardwell* v. *Lewis,* 471 U.S. 583 (1974). However, the United States Supreme Court has consistently recognized that an automobile does not enjoy the same constitutional protection that a home does because of its mobility and because one does not have the same expectation of privacy in a vehicle as one would in a house. *Carroll* v. *United States,* 267 U.S. 132 (1925); *Chambers* v. *Maroney,* 399 U.S. 42 (1970). This has come to be known as the automobile exception and its application has many facets. This case does not fall within the rule that allows the search of part of the vehicle that is within the immediate reach or control of the one arrested. *New York* v. *Belton,* 450 U.S. 1028, 69 L. Ed. 2d 768, 101 S. Ct. 2680 (1981); *Chimel* v. *California,* 395 U.S. 752 (1969). This is a case similar to *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). In the *Coolidge* case the police seized a vehicle in the driveway of a private residence without a warrant and seizure was held to be unreasonable because there were no exigent circumstances. In doing so, however, the court pointed out six circumstances that affected their decision, six reasons why exigent circumstances did not exist: 1. The police had known for some time of the probable role of the vehicle in the crime; 2. The defendant was aware that he was a suspect, had been cooperative and there was no indication he would flee; 3. He had already had ample opportunity to destroy any evidence; 4. There was no suggestion that the vehicle was being used for an illegal purpose, and it was regularly parked in the

driveway of his house; 5. The opportunity for search was not "fleeting;" and 6. The objects the police assumed to be in the car were neither stolen, contraband, nor dangerous. The counterparts of these six reasons all exist in this case: 1. The robbery had occurred just the evening before; 2. Vinston was not contacted until he was arrested the next day at 11:00 a.m.; he had no reason to know that he was a suspect or that his car had been identified as being used in the robbery, so he would have no reason to destroy any evidence or remove any contraband; 3. The vehicle was not in a private driveway but at a business establishment; 4. There were two other suspects in the case, both white, who had not been identified or arrested at the time Vinston was arrested; 5. The police had good cause to believe that they would only have this "fleeting" opportunity to seize the vehicle before someone could remove the evidence or contraband; and, 6. The police had positive information that the vehicle was used in the crime and possibly contained evidence or stolen property.

The seizure of a vehicle is justified when confederates or others might remove a vehicle. *U.S.* v. *1972 Chevrolet Nova,* 560 F. 2d 464 (1st Cir. 1977); *See* W. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, § 11.3 (1980).

In *Freeman* v. *State,* 258 Ark. 617, 527 S.W. 2d 909 (1975), we held the seizure of the accused's automobile to be unreasonable. But *Freeman* is distinguishable for several reasons: The vehicle was located on private property at a residence; Freeman was arrested two blocks away from his vehicle; and, there had been no positive identification of the vehicle seized as being the one used in the crime. Clearly, exigent circumstances existed warranting the seizure of Vinston's vehicle.

Vinston's argument that his identification at the lineup was too suggestive is also meritless. Both Henshaws pointed out Vinston from six photographs in the early morning after the robbery. It is argued that the Henshaws, Jones, the plant supervisor, and Cathy Meechan, a clerk at a store next door to the jewelry store, were repeatedly taken through the lineup and suggestions were made by the police. This

argument is based primarily on the testimony of a lawyer who represented one of the white suspects, Mr. Storey, who co-owned the garage with Vinston. Evidently the police were not all that suggestive because neither of the two white suspects was identified. Only Vinston was identified and only the Henshaws identified him. Mr. Henshaw said he only viewed the lineup of the black men once. Mrs. Henshaw said she viewed it twice. Both denied that any suggestions were made to them and the two detectives verified their testimony. On appeal we review the totality of the circumstances to see if the trial court's decision was clearly erroneous. *Beed* v. *State*, 271 Ark. 526, 609 S.W. 2d 898 (1980). Whether an identification is tainted depends upon several factors: The opportunity to observe the criminal, the accuracy of the victim's description, the amount of certainty of the victim at the time of the confrontation and the length of time between the crime and identification. *Washington* v. *State*, 273 Ark. 482, 621 S.W. 2d 216 (1981). Both Henshaws testified that they got a good look at the robbers. In this case the identification was made less than twenty-four hours after the crime was committed. The trial court's decision admitting the identification evidence was not clearly erroneous.

The police obtained a search warrant for Vinston's vehicle on the Monday following the robbery. The warrant was signed by one of the detectives and it was based on the positive identification of Vinston by the Henshaws and the information supplied by Mr. Jones. It is argued that the warrant was deficient because it was based on hearsay and the warrant did not come within the test of *Aguilar* v. *Texas*, 378 U.S. 108 (1964). *Aguilar* dealt with an unidentified police informant and does not control. In this case the face of the warrant stated Mr. Jones' name and address, that he had observed Vinston's vehicle at the place of the robbery, and that Vinston had been arrested for the robbery. A valid warrant may issue based upon hearsay information as long as there is substantial basis for crediting the hearsay. *Rowland* v. *State*, 262 Ark. 783, 561 S.W. 2d 304 (1978); *Flaherty* v. *State*, 255 Ark. 187, 500 S.W. 2d 87 (1973), cert. denied 415 U.S. 995 (1974). The search wrrant was based on solid information.

A rather weak argument is made that the State did not prove the chain of custody of the items recovered from the trunk of the vehicle. The unrefuted testimony of the officer was that the vehicle was towed to a fenced lot used by the police for storing such vehicles. The enclosure was locked, and at night there were watch dogs running loose in the enclosure. The officer testified that he had to force open the trunk because the key that they had taken from Vinston would not open the trunk. Actually, Vinston claimed that he gave the officers permission to search the vehicle at the time he was arrested and they refused to do so. He said he told them that the trunk could be opened by pulling a latch in the glove compartment of the vehicle. The officers testified that Vinston refused permission to search the vehicle when he was arrested. The officer said the trunk was forced because he did not know that this type of vehicle had a trunk latch in the glove compartment. The trial court was satisfied the State had shown a proper chain of custody and error has not been demonstrated by the appellant.

Affirmed.

ADKISSON, C.J., and PURTLE, J., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. The police arrested appellant and seized his automobile. There was no testimony bearing on the appellant's location relative to the car at the time of the arrest and seizure. We must, therefore, assume that the search incident to arrest doctrine has no applicability to this case.

This case is governed by *Coolidge* v. *New Hampshire*, 403 S.W. 2d 443 (1971), which held that the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest. Warrantless searches are presumed to be unreasonable.

The State attempted to justify the seizure by proof of exigent circumstances recognized in *Coolidge* as sufficient to dispense with the warrant requirement. Although the majority finds this proof sufficient, it was, in fact, not sufficient because the determining factors making a warrant

necessary in *Coolidge* are also present in this case. They are: "advance police knowledge of the existence and location of the evidence, police intention to seize it, and the ample opportunity for obtaining a warrant."

Here the police knew in advance that they wanted to seize the car. They knew it was used in the robbery and that it was registered in the name of the appellant. The police had ample opportunity to obtain a search warrant for the car at the same time they requested the arrest warrant for the appellant.

I am hereby authorized to state that PURTLE, J., joins me in this dissent.