## Billy Gale HENRY *v.* STATE of Arkansas

CR 82-52                                            647 S.W.2d 419

Supreme Court of Arkansas
Opinion delivered February 28, 1983
[Rehearing denied March 21, 1983.]

480

*Michael Dabney*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted as an accomplice to capital murder, hindering apprehension or prosecution and of being an habitual offender. He was sentenced to death for felony murder and to 40 years imprisonment for hindering apprehension or prosecution. On appeal appellant argues 14 points; they will be set out in the body of this opinion. We do not find any prejudicial error but by comparing we reduce appellant's death sentence to life without parole.

The appellant and Rodney Britton were together on the date the West Fork Chief of Police was killed. Britton had spent a few days camped out on the farm where appellant lived with his mother near Mountainburg, Arkansas. On March 20, 1981, the appellant and Britton spent the day in and around the City of Fayetteville. Shortly after 9:00 o'clock p.m. on that date the Pizza Hut North in Fayetteville was robbed by an armed intruder. Subsequently Britton was identified as the man who robbed the Pizza Hut North. Appellant stated that he and Britton were at a cafe in Fayetteville at 9:00 p.m. on the date in question, but that

Britton borrowed another car and was gone for about 20 minutes. Appellant contended that when Britton returned he obtained the keys to appellant's car, opened the trunk, placed a jacket in the truck and took out one of another color and put it on. Shortly after 10:00 p.m. Britton and appellant headed south on U.S. Highway 71, toward Mountainburg, when they stopped at a service station in West Fork to obtain gas. The service station attendants were in the process of closing and refused to sell them any gas. At that time appellant, who had been driving, got out of his car, walked around to the passenger side and Britton moved over to the driver's position. The facts indicate appellant had been drinking and also taking medicine for heart disease. He gave the appearance of being intoxicated because the attendants stated he staggered when he walked around the car. After the car pulled away an attendant notified Chief Paul Mueller that the occupants of the car appeared to be drinking. Chief Mueller then proceeded south on Highway 71 in an attempt to overtake the car. Mueller caught up with the suspects and using his bluelight pulled them over the side of the road. While making the stop he radioed that the parties in the vehicle were acting "squirrely." That was his last message. After he stopped the car the appellant got out of the passenger side and started back toward the officer's car when Chief Mueller told him to get back in the car, stating he wanted to talk with the driver. Britton then got out of the driver's side and immediately four shots were fired. A nearby resident testified that the first two shots were louder than the second two shots. Britton was using a .44 caliber magnum pistol and Chief Mueller had a .38 caliber magnum pistol. Chief Mueller was shot twice by Britton and apparently the chief fired one round which struck the appellant in the back. The other bullet fired by the chief hit the trunk and passed into the passenger compartment of appellant's vehicle. A witness arrived on the scene as Britton was driving appellant's car away. The witness found Chief Mueller, with pistol in hand, dying on the shoulder of the road in front of his vehicle. At that time appellant was in the edge of a ditch. The wounds to appellant turned out not to be too serious.

Back-up officers arrived on the scene within a matter of minutes and one of them, armed with a shotgun, approached

appellant who stated: "Don't shoot, I surrender," or "Don't shoot, I give up" or "Don't shoot, I've been shot." Appellant stated to police officers at the hospital that he did not know the identity of Britton who he stated was a hitchhiker. Appellant's vehicle was found a mile or so down the road, out of gas. It was towed to the police department and searched without either a warrant or asking the appellant for permission to search the vehicle. The search produced, among other things, a green money bag which was identified by the employees of the Pizza Hut as one which was used in the robbery of that establishment. Officer Doug Fogley, who conducted the search, knew that appellant was in the hospital in Fayetteville at the time of the search. Fogley also administered a trace metal detection test on appellant and determined that he had not handled a gun that evening. The following morning Fogley and four other officers interrogated appellant in the intensive care unit of the Veterans Administration Hospital in Fayetteville. The interrogation was conducted with the consent of the attending physician. During this interrogation appellant indicated that he had picked up Britton as a hitchhiker. (Britton was killed several days later in a shootout with the police not far from the scene of the death of Chief Mueller.)

During the trial it was established that Britton and appellant had become acquainted while serving time together at Leavenworth Federal Penitentiary. There was no dispute but that appellant knew the identity of Britton when he said he did not know him. Appellant was allowed to serve as co-counsel during his trial. After his conviction as an accomplice to capital murder and hindering apprehension and prosecution he was allowed to address the jury on the penalty phase. During this argument he requested that the jury give him the death penalty rather than life imprisonment. The jury obliged.

I.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR SEVERANCE OF THE OFFENSES OF HINDERING APPREHENSION AND ACCOMPLICE TO CAPITAL MURDER.

The evidence clearly indicated that it was Britton who fired the shots which killed Chief Mueller. There was no direct evidence that appellant actively assisted in the shooting of the officer. Our established law is that granting or refusing a severance is within the discretion of the trial court. *Ruiz & Van Denton* v. *State*, 273 Ark. 94, 617 S.W.2d 6 (1981). A.R.Cr.P. Rule 22.2 (b) states:

> (b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of offenses:

> (i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . .

Pursuant to the foregoing rule the trial court determined that it was not necessary to grant a severance in order to promote a fair determination of the defendant's guilt or innocence. The facts necessary to prove the offenses would almost all be required in each trial if a severance were granted. Evidence of the Pizza Hut robbery was found in appellant's car. This evidence would be used in both trials, as would other acts and evidence, to establish a plan, scheme, motive or state of mind. The conduct of appellant, both before and after the murder, would be admissible for the purpose of showing a plan or scheme. A.R.Cr.P. Rule 21.1 (b) provides that offenses may be joined for trial when they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. *Owen* v. *State*, 263 Ark. 493, 565 S.W.2d 607 (1978). The trial court did not abuse its discretion in refusing to sever the offenses in this case.

II.

## THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT.

The appellant argues that the evidence was insufficient to support the conviction of capital murder. We realize that the evidence is primarily circumstantial but it was of such

force that it would induce the mind of the average person to pass beyond suspicion and conjecture. It was of sufficient force and character to support a finding of reasonable and material certainty and to compel a conclusion one way or the other. *Jones* v. *State,* 269 Ark. 119, 598 S.W.2d 748 (1980).

The evidence revealed that appellant and Britton had been together most of the day and that both were present at the time of the shooting of Chief Mueller. They were in appellant's automobile and evidence of the robbery of the Pizza Hut was found in the automobile which was owned by the appellant and driven by Britton. Several witnesses testified as to the association of appellant and Britton while they were at Leavenworth. Most of the witnesses indicated that appellant was not a friend of Britton's. One inmate from Leavenworth testified that he had observed Britton and appellant discussing legal matters as they ate together at Leavenworth. Appellant was released from Leavenworth prior to Britton's release. Britton arrived at appellant's residence on March 15, 1981. He stayed in or around the appellant's residence until the death of Chief Mueller on March 20, 1981. Appellant falsely told the officers that he did not know Britton. There is considerable other evidence supporting the finding that appellant and Britton were acting together at the time of the death of Chief Mueller. It is the province of the jury to determine the credibility of the witnesses. *Riddick* v. *State,* 271 Ark. 203, 607 S.W.2d 671 (1980). The jury is free to disregard the testimony of the appellant if it so chooses. *Core* v. *State,* 265 Ark. 409, 578 S.W.2d 581 (1979). This court will not disturb the jury's findings regarding credibility of the witnesses. *Wright* v. *State,* 177 Ark. 1039, 9 S.W.2d 233 (1928).

Ark. Stat. Ann. § 41-303 (Repl. 1977) defines accomplice as a person who solicits, advises, encourages or coerces the other person to commit the crime or who aids, agrees to aid, or attempts to aid the other person in planning or committing it. Also, if the person has a duty to prevent the commission of an offense and fails to make a proper effort to do so, he is an accomplice. *Bowles* v. *State,* 265 Ark. 457, 579 S.W.2d 596 (1979). A person need not take an active part in a murder to be convicted of such if the person accompanied

the person or persons who actually committed the murder and assisted in such commission. *Hallman & Martin* v. *State*, 264 Ark. 901, 575 S.W.2d 688 (1979). Our capital murder law is codified as Ark. Stat. Ann. § 41-1501 (Repl. 1977) which states in part:

(1) A person commits capital murder if:

(b) with the premeditated and deliberated purpose of causing the death of any law enforcement officer, jailer, prison official, fireman, judge or other court official, probation officer, parole officer, or any military personnel, when such person is acting in line of duty, he causes the death of any person; or . . .

A review of the record confirms that the jury could have properly found the appellant guilty as an accomplice in causing the death of Chief Mueller.

III.

THE TRIAL COURT ERRED IN ADMITTING THE STATEMENT, "DON'T SHOOT, I GIVE UP."

During the trial Officer Price testified that when he first approached Henry at the scene where Chief Mueller was killed, Henry, who was lying on his back stated: "Don't shoot, I give up." The appellant argues that his statement was "Don't shoot, I've been shot." The jury had the right to decide which statement to believe. Appellant's objection to the statement is that it was not provided in response to his motion for discovery. It is conceded by the state that it was not provided to the defense. The prosecutor contended the state itself did not know the statement had been made until revealed in the testimony at trial. The defense had timely entered its motion for discovery pursuant to A.R.Cr.P. Rule 17. We do not find any evidence that the state deliberately avoided obtaining this information in order to have it presented at trial. Under Rule 19.7, it is up to the trial court to decide whether such a statement should be admitted. Appellant knew that Officer Price would be a witness and his counsel had the right and duty, time permitting, to

interview the officer and perhaps discover what the officer was going to say at the trial. Appellant relies on the case of *Williams* v. *State,* 267 Ark. 527, 593 S.W.2d 8 (1979), for the argument that the statement should be excluded. In *Williams,* the state found out about other statements, which had not been furnished the defense, the day before trial. The information was not furnished to the defense until after voir dire of the jury. We reversed and stated: "There is no doubt, then, that the police officer knew of the statement. That knowledge is imputed to the prosecuting attorney." In the present case the state and the defense found out about the statement at the same time. We find that it was not prejudicial error for the trial to continue after Officer Price made his unexpected statement. Furthermore, we cannot say with any degree of certainty that the statement was either inculpatory or damaging to appellant's defense.

## IV.

### THE DEATH PENALTY IS UNCONSTITUTIONAL IN THIS CASE.

Appellant argues that an accomplice who did not participate in the actual murder should not receive the death penalty. In *Collins* v. *State,* 261 Ark. 195, 548 S.W.2d 106, cert. den. 434 U.S. 878, rehearing denied 434 U.S. 977 (1977), we discussed this court's responsibility in reviewing death cases as they relate to other death cases. In *Sumlin* v. *State,* 273 Ark. 185, 617 S.W.2d 372 (1981), we also made a comparison of the sentence which had been imposed since *Collins.* We reviewed Sumlin's death sentence and compared it with that of life imprisonment without parole which had been given to his wife in the same case. We reduced Sumlin's death sentence to life without parole. We cannot compare appellant's sentence to that of Britton because he was killed by police officers soon after the murder. After comparing it with other death sentences and sentences of life without parole, we find that appellant's sentence should be reduced from death to life without parole for two reasons: (1) the evidence is overwhelming that he was merely an accomplice and did not personally fire the fatal shots, and (2) the jury may have sentenced him to die out of

passion and prejudice because the main actor in the murder could not be tried.

## V.

## THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION CHALLENGING THE DEATH QUALIFICATION OF PROSPECTIVE JURORS.

Appellant readily admits that we have previously rejected the argument that a death qualified jury is impermissible. *Lasley* v. *State,* 274 Ark. 352, 625 S.W.2d 466 (1981). We are at this time still of the opinion that such qualification is constitutional.

## VI.

## THE TRIAL COURT ERRED IN ITS RULING TO ALLOW IMPEACHMENT OF DEFENDANT BY USE OF A PRIOR ROBBERY CONVICTION.

Perhaps no other rule of evidence or law has given us so many problems as Rule 609. Appellant properly brought the matter of the prior robbery conviction to the attention of the court through a motion in limine. The court overruled the motion and allowed the state to question appellant about a prior robbery conviction. In *Jones* v. *State,* 274 Ark. 379, 625 S.W.2d 471 (1981), we stated:

> The Uniform Rule [609] unquestionably changed the Arkansas law, which formerly permitted proof of a conviction of any felony to impeach a witness's credibility . . . [t]he Uniform Rule is specifically directed to the conviction's probative value with respect *only* to credibility . . .

Evidence of prior criminal convictions is not admissible to bolster the prosecution's case by showing that the accused is a bad person but is limited for the purpose of discrediting the witness's testimony. We think the rule, as it presently stands, is as stated in *Floyd* v. *State,* 278 Ark. 342, 645 S.W.2d 690 (1983): " . . . the probative value must be weighed against the

prejudicial effect when evidence of prior convictions is admitted." We think that the court did not abuse its discretion in weighing the prejudicial effect against the probative value of allowing the prior conviction to be used for impeachment purposes. In the present case the appellant himself repeatedly mentioned his prior conviction during the course of the trial and this would constitute a waiver under the circumstances.

## VII.

## THE TRIAL COURT ERRED IN REQUIRING THE APPELLANT TO BE TRIED WHILE INCOMPETENT TO STAND TRIAL.

The appellant did not raise the defense of mental disease or defect in the trial court. After both sides had rested appellant submitted a medical record to the court which revealed he had been referred to a consulting psychiatrist at the Veteran's Administration Hospital in Fayetteville. Appellant, who was acting as co-counsel, stated he did not think it was relevant but wanted it in the record anyway.

We think this evidence is insufficient to raise the question of the appellant's mental capacity to stand trial. The burden of proving incompetence is on the defendant in a criminal trial. *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979). Additionally, the appellant did not abstract the report or offer any discussion about it which would allow consideration. He did not contend below that he intended to raise mental disease or defect as a defense, and gave no notice as required by Ark. Stat. Ann. 41-604 (Repl. 1977). We cannot consider a matter raised for the first time on appeal. *Kitchen* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980).

## VIII.

## IT WAS ERROR TO ADMIT CHIEF MUELLER'S RADIO TRANSMISSION.

The statement by the decedent over his police radio that the appellant and Britton were "acting squirrely" is hearsay

pursuant to Arkansas Uniform Rules of Evidence, Rule 801. Even though the statement was inadmissible, we do not find it to have been prejudicial. We cannot imagine how this statement could have affected the jury one way or the other as to appellant's guilt or innocence of the crime for which he was charged. There was no prejudicial error under this point, even though the transmission should not have been admitted into evidence.

## IX.

## IT WAS ERROR TO DENY APPELLANT'S REQUEST FOR CERTAIN SUBPOENAS.

Appellant sought to have summons issued for John Logan, an inmate at Leavenworth, and unnamed persons from the Cummins Unit of the Arkansas Department of Correction. He alleges that Logan would testify that Britton had a list of people which he intended to kill and that appellant was on the list. He also sought the unnamed Cummins inmates' attendance for the purpose of testifying that if they had used dogs the officers would have been able to track Britton down immediately. He argues that the information he gave the officers would have enabled dog handlers to have located Britton immediately. The court ruled that Logan's testimony was not material and that the testimony of the Cummins inmates was also irrelevant. Several witnesses from Leavenworth were subpoenaed and brought to the trial. Ark. Stat. Ann. § 43-2001 (Repl. 1977) provides that a defendant shall be entitled to have unlimited witnesses subpoenaed in a capital murder case. However, this right is not absolute when it pertains to out-of-state witnesses. *Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1979). We find that there was not a manifest abuse of the court's discretion in this case. The appellant did not furnish any information which indicated that these witnesses were material to the defense of accomplice to felony murder and the court specifically ruled on relevance. Therefore, we do not think the appellant was prejudiced by the action of the court.

## X.

### IT WAS ERROR TO ALLOW OFFICER PRICE TO TESTIFY THAT THE APPELLANT STATED "I GIVE UP" AT THE TRIAL.

Appellant insists that allowing this statement was a violation of the rule set down in *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We treated this statement under the appellant's Point III. However, we hold that the statement was not a result of questioning by the police but rather was in the nature of a spontaneous explanation. The appellant was neither in custody nor subjected to interrogation at the time of this utterance. Even if he were in custody, a spontaneous statement would be admissible. *Rhode Island* v. *Innis*, 446 U.S. 291 (1980). See also *Murry* v. *State*, 276 Ark. 372, 635 S.W.2d 237 (1982).

## XI.

### IT WAS ERROR TO ADMIT EVIDENCE OF THE ROBBERY OF THE PIZZA HUT.

Appellant argues that the court erred in admitting evidence about the robbery of the Pizza Hut and insists that it violates Uniform Rules of Evidence, Rule 402 and Rule 403.

Rule 402 provides that all relevant evidence is admissible except as otherwise provided by statute or rule. Rule 403 provides that relevant evidence which is unfair, prejudicial, confuses the issue, misleads the jury, or is a waste of time may be excluded. However, the court admitted this evidence pursuant to Rule 404 (b). This rule provides that evidence may be admissible for the purpose of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Admittedly, there is no proof that appellant was at the scene of the robbery of the Pizza Hut. However, evidence found in his vehicle definitely tended to show that the person or persons who robbed the Pizza Hut were in appellant's car shortly after the robbery. This evidence was ruled to be relevant in regard to appellant and Britton having a motive to kill Chief

Mueller when he pulled them over; the motive being fear of discovery of the Pizza Hut robbery evidence. We have held many times that such evidence is properly admitted. *Williams* v. *State,* 276 Ark. 399, 635 S.W.2d 265 (1982); *Ford* v. *State,* 276 Ark. 98, 633 S.W.2d 3 (1982). Therefore, we find there was no prejudicial error in allowing evidence of the Pizza Hut robbery to be presented in this case.

## XII.

## THE COURT ERRED IN FAILING TO SUPPRESS CERTAIN EVIDENCE.

Evidence connecting appellant to the robbery of the Pizza Hut was obtained when his automobile was searched about two hours after the death of Chief Mueller. The car had been driven from the scene of the killing by Britton. Appellant told the officers the car had been stolen. At the time of the search the vehicle was in possession of the officers and the appellant was in the emergency room or the intensive care unit of the hospital. Since appellant indicated that the automobile was no longer within his custody or control, he did not have a protected interest which would prevent seizure of articles found in the vehicle. We have held that it is permissible for police to search an abandoned vehicle, especially if it is one from which a suspect flees to avoid apprehension. *Pickens* v. *State,* 261 Ark. 756, 551 S.W.2d 212 (1977), cert. den. 435 U.S. 909 (1978). The police obviously had reason to suspect that the vehicle might contain evidence which would reveal the identity of the hitchhiker who had allegedly stolen the vehicle and who was still at large. The circumstances of this case further reveal that the officers might well have believed that appellant was unable to give information about the vehicle or consent to its search. We recognize that the state has the burden of justifying a warrantless search of a vehicle. An automobile does not enjoy the same constitutional prohibition that a home does in all situations. *Vinston* v. *State,* 274 Ark. 452, 625 S.W.2d 533 (1981). An automobile has become an exception to the Fourth Amendment's protection in cases where exigent circumstances exist. *Chimel* v. *California,* 395 U.S. 752 (1969). The circumstances here were that an

unknown murder suspect was still at large and probably in the vicinity of West Fork. We think the police did not act improperly in the search of the automobile under the circumstances present in this case.

## XIII.

### IT WAS ERROR TO ADMIT CERTAIN STATEMENTS INTO EVIDENCE.

It is argued that statements by a security guard at the Veteran's Administration Hospital were improperly admitted. At the time appellant was admitted to the hospital he was not under arrest nor was it known by the personnel at the hospital that he was even a suspect to a crime. The guard was dressed in a uniform similar to that of a police officer. However, he did not investigate this incident at all.

The statements made to the guard were not the result of questions by the guard but were, rather, voluntary statements on the part of the appellant. Appellant did not deny that he made the statements but wanted to have them excluded as having been given in violation of his right to remain silent. The courts have never gone so far as to exclude statements given by an accused which were voluntarily made before he was considered a suspect in a criminal act. There simply is no precedent cited for this argument. We have been unable to find a case wherein a voluntary statement given prior to the time that the person is suspected of a crime is in violation of his constitutional rights. Therefore, there is no error in regard to this point.

## XIV.

### IT WAS ERROR TO ADMIT STATEMENTS MADE BY APPELLANT.

Appellant insists that he did not voluntarily, knowingly and intelligently waive his rights at the time he made statements to police officers investigating the killing of Chief Mueller. The voluntariness of a custodial statement must be proven by the state. *Degler* v. *State,* 257 Ark. 388, 517

S.W.2d 515 (1974). Appellant was given a Miranda warning about 7:15 a.m. on March 21, 1981. This was some eight or nine hours after the death of Mueller. The appellant primarily relies upon his physical condition and the medication he was receiving to refute the idea that he voluntarily and knowingly executed the rights form and gave the statement. It is true that he had been taking a variety of medications, including codeine and valium. Appellant was being administered fluids and antibiotics intravenously as well as by mouth. Also, he was connected with a heart monitor. We think the medication and devices which appellant was subject to were less than those in the case of *Mincey* v. *Arizona*, 437 U.S. 385 (1978). In *Mincey*, tubes were inserted into his throat to help him breathe and through his nose into his stomach to keep him from vomiting. He had a catheter inserted into his bladder, and was undergoing intravenous feeding in addition to being administered several drugs. The Arizona court refused to allow a statement given under these circumstances in the prosecution's case in chief but did allow it for impeachment purposes. Dr. Brannon testified at the time the statement was taken the that the appellant was to some degree under the influence of medications but that he thought he was fully capable of understanding and giving a statement. The rights form was executed and the statement given while the appellant was in the intensive care unit. He had not been arrested and was not in custody. However, we find that the statement would be admissible even if appellant had been in custody. The officers first received the permission of the doctor to interview the appellant. It was the doctor's testimony that appellant's ability to think clearly was not significantly impaired; otherwise, he would not have allowed questioning by the officers. His testimony was that the medications might have affected appellant's alertness but that it would not hinder his ability to clearly communicate or understand. It was the doctor's opinion that there was nothing about appellant's physical or mental condition which would prevent him from understanding the nature of the interrogation and his right to refuse to cooperate. We hold that the appellant's statement and waiver were knowingly, voluntarily and intelligently given.

## XV.

OTHER ADVERSE RULINGS.

We have reviewed the record for other rulings adverse to the appellant and find none which would constitute prejudicial error.

Therefore, the sentence of death as an accomplice to capital murder will be reduced to life without parole and the judgment is otherwise affirmed.

Affirmed as modified.

HICKMAN, J., concurs.

ADKISSON, C.J., dissents.

DARRELL HICKMAN, Justice, concurring. This is the first capital case in which we have actually had to compare the propriety of the death sentence with the sentence in other cases. In none of those we have approved are there any candidates for legal mercy — they deserved the death penalty without question for their particular crimes.

That is not the case here, not if we abide by the majority's decision in *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977), *cert. denied* 434 U.S. 878 (1977). In *Collins,* we abandoned the notion there must be a legal mistake in order to reduce a sentence in a death case. We made a pact, so to speak, that we would, on our own, make certain the death penalty was not the result of passion, prejudice or excessive under the circumstances. We have to keep that pact as a matter of integrity. I concur only to point out that I disagree to that extent with the dissent. That the defendant did not pull the trigger is not always a determinative factor — it may be an appropriate reason or not to reduce the death penalty, depending on the circumstances.

RICHARD B. ADKISSON, Chief Justice, dissenting. I concur in the affirmance of this case but dissent from this

court's modification of the judgment by reducing the punishment to life imprisonment without parole.

The majority has found that the state sufficiently and fully proved that appellant did with premeditation and deliberation kill Chief Mueller. Under such circumstances it does not matter who actually pulled the trigger. More often than not the more culpable offender allows someone else to actually do the dirty work.