**Harold Davey CASSELL, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 88–2280.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1989.

Decided Sept. 22, 1989.

Ray Hartenstein, Little Rock, Ark., for appellant.

Frank Knight, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Harold Davey Cassell appeals from an order of the District Court [1] denying his 28 U.S.C. § 2254 petition for a writ of habeas

1. The Honorable G. Thomas Eisele, Chief United States District Judge for the Eastern District of Arkansas.

corpus. The sole issue before us is whether Cassell's conviction for capital murder was supported by sufficient evidence. We find that it was and affirm the denial of his petition.

## I.

Cassell was convicted by an Arkansas jury on September 25, 1979, of capital murder and was sentenced to life in prison without parole. The conviction stemmed from the murder of a Springdale, Arkansas police officer, John Tillman Hussey.

At approximately 3:45 a.m. on the morning of December 21, 1975, Officer Hussey radioed police headquarters that he was making a traffic stop of an International Travel–All with Texas license plates JEX–966 on Highway 71 near the city line between Springdale and Fayetteville, Arkansas. When the police backup unit arrived approximately four minutes later, only Officer Hussey's patrol car, its blue lights still flashing, remained at the roadside. The Travel–All, Officer Hussey, and any other people who earlier were there were gone.

Later that morning, a Travel–All bearing Texas plates JEX–966 was found in a remote wooded area approximately fourteen miles west of Fayetteville. The Travel–All had been set on fire and was still smoldering. In a ravine approximately 125 feet from the Travel–All police found the body of Officer Hussey. He had been handcuffed and shot with his own .357 magnum four times in the back of the head.

After approximately a month of investigation, capital murder charges were filed against Cassell and James Ray Renton. Bench warrants were issued but some thirty months passed before Cassell was apprehended in Montana. Cassell and Renton were tried separately, with Renton's trial taking place first. Cassell's trial began September 10, 1979, and on September 25 he was found guilty and sentenced. The conviction and sentence were affirmed on direct appeal to the Arkansas Supreme Court. *Cassell v. State*, 273 Ark. 59, 616 S.W.2d 485 (1981).

On July 2, 1985, Cassell filed a habeas petition in the United States District Court for the Eastern District of Arkansas. The petition was denied and this appeal followed.

## II.

█ The scope of our review here is extremely limited. We review the evidence only to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The Arkansas Supreme Court's conclusion that the evidence was sufficient to support the conviction is entitled to considerable deference. *Id.* at 323, 99 S.Ct. at 2791. Indeed, whether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt "is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them." *Moeller v. Attorney General of South Dakota*, 838 F.2d 309, 310 (8th Cir.1988).

Cassell was convicted of capital murder under the theory that he was an accomplice. The Arkansas law applicable to this case provides that one commits capital murder if, "with the premeditated and deliberated purpose of causing the death of any law enforcement officer ... when such person is acting in line of duty, he causes the death of any person." Ark.Stat.Ann. § 41–1501(1)(b) (Repl.1977).[2] One is liable as an accomplice if

[w]hen causing a particular result is an element of an offense, [the person] ... act[s] with respect to that result with the kind of culpability sufficient for the commission of the offense, [and]

(a) solicits, advises, encourages or coerces another person to engage in the conduct causing the result; or

(b) aids, agrees to aid, or attempts to aid another person in planning or engaging in the conduct causing the result; or

---

**2.** Current version at Ark.Code Ann. § 5–10–101(a)(2) (1987).

(c) having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

Ark.Stat.Ann. 41–303(2) (Repl.1977).[3] In discussing these statutes the Arkansas Supreme Court has pointed out that "[a] person need not take an active part in a murder to be convicted of such if the person accompanied the person or persons who actually committed the murder and assisted in such commission." *Henry v. State*, 278 Ark. 478, 486–87, 647 S.W.2d 419, 424, *cert. denied*, 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983). Cassell contends "[t]here is no evidence in this record showing [he] was present at the scene of the murder, that he had the purpose of promoting or facilitating the murder, and no evidence that he solicited, advised, encouraged, or coerced anyone to commit the murder, or that he aided, agreed to aid, or attempted to aid anyone in planning or committing the murder." Brief for Appellant at 8.

After carefully reviewing the record, we find that there was sufficient evidence to support the conviction. Although the evidence was well summarized by the Arkansas Supreme Court, *see Cassell*, 273 Ark. at 62–67, 616 S.W.2d at 487–89, we provide the following brief discussion.

Connie Marie Caves, who lived with Renton, testified that Cassell, Renton, and Carl Don McLaughlin[4] were professional burglars. The men committed burglaries in a number of states, traveling from one "job" to the next in Renton's Travel–All and Cassell's brown Chrysler passenger car, and carrying in a common bag the tools needed for their criminal activities.

On December 18, 1975, Cassell, Renton, McLaughlin, and a fourth person, Larry Lynn Wallace, left Caves at a motel in Dallas to do a "job" in Arkansas. On December 20, they checked into a Holiday Inn in Fayetteville, Arkansas. When registering at the hotel, as was his practice when doing "jobs," Cassell used the alias "Richard Green." During that afternoon, the four men were seen gathered near Renton's Travel–All and Cassell's Chrysler on the Holiday Inn parking lot and Renton and two other men were seen two or three times at the Campbell–Bell store in Rogers, Arkansas.

Sometime during that night, the Campbell–Bell store was burglarized and about thirty coats were stolen. At approximately 1:45 a.m. on December 21, a "van-type" vehicle and a passenger car were seen driving "real fast" away from the store across a field. The witness thought, though he was not certain, that the car was a Chrysler. Expert analysis of photographs of the tracks that were found, while not yielding positive identification, indicated that the tracks could have been made by Cassell's car. The bag of tools that Cassell and the others used in their burglaries was also found at the store.

At approximately 3:45 a.m. the same morning, Officer Hussey made a traffic stop of Renton's Travel–All. The stop took place some fifteen or twenty miles south of Rogers as the Travel–All was heading south on Highway 71. Apparently, when the Travel–All pulled to the roadside a passenger car did the same. One witness said he saw three vehicles stopped together; a passenger car in front, twenty or thirty feet behind that a "Travel–All or suburban type vehicle," and behind that a Springdale patrol car. The witness said the passenger car could have been a Ford, but could just as well have been something else. The only person he saw was a police officer. A second witness also saw the three vehicles. He testified that the passenger car was an off-white Ford and that, in addition to seeing a police officer, he saw two or three people in the Travel–All. It was later that same morning that, in a remote wooded area west of Fayetteville, Officer Hussey's body was found near the smoldering Travel–All. In the charred interior of the vehicle were numerous buttons of the kind that had been on the coats stolen from the Campbell–Bell store.

That morning, while law enforcement officials were discovering the murder, Cassell and Renton arrived at the home of John

3. Current version at Ark.Code Ann. § 5–2–403 (1987).

4. McLaughlin committed suicide some months after the murder of Officer Hussey.

Potter, a used car dealer in Oklahoma City, Oklahoma, from whom Cassell had earlier purchased the Chrysler.[5] Potter testified that the two men were dirty, that Renton appeared "extremely nervous," and that Cassell too seemed unusually nervous. Because it was a Sunday, Potter's car lot was not open. Potter nevertheless accompanied Cassell and Renton to the lot and a deal was made in which the Chrysler was traded for another car. Into this car Cassell and Renton transferred suitcases and other gear.

On December 23, 1975, all four men returned to the motel in Dallas. Although Cassell and Renton had sported full beards when they left Dallas December 18, upon their return December 23 they were clean-shaven. All the men assumed new names and obtained new identification.

The original group of four, i.e., Cassell, Renton, McLaughlin, and Caves continued to travel together for several months. Caves testified that during this time Cassell said he knew he was wanted for murder and that if he was caught he would "give up." She further testified that in a discussion in Seattle in June 1976, Cassell, along with McLaughlin, said that if he were to die he would want to take all blame for the murder.

Naturally, Cassell challenges the evidence.[6] One of his primary arguments has to do with the passenger car seen in front of the Travel–All at the roadside stop made by Officer Hussey. Cassell argues that the car might have been McLaughlin's white Ford rather than Cassell's Chrysler and that Cassell might have been somewhere else. This he bases on witness Charles Gillman's testimony that the car in front of the Travel–All was an off-white Ford. What testimony to believe is, however, for the jury to decide, and the jury had ample reason to be skeptical of the accuracy of Gillman's testimony. Gillman had told investigators that the passenger

car had Arkansas plates but testified at trial it had Texas plates; he apparently originally said the Travel–All had at least four occupants but at trial testified first that it had two or three people in it and then that it had "at least three"; at an earlier hearing he testified that the police car was from Fayetteville, but at trial he testified it was from Springdale; and he testified at trial that he knew Officer Hussey was in trouble, yet he neither stopped nor so informed the police until he was specifically asked about the incident one week later. Tr. at 1390–1402.

Even putting aside the inconsistencies in the information provided by Gillman, Cassell's theory that McLaughlin's Ford was used the night of the murder is tenuous at best. Gillman was the only witness who saw the men and put them in or near a white Ford at any time while they were in northwest Arkansas. In fact, nobody testified that the men even had three cars there, and nobody testified that they saw McLaughlin drive any vehicle other than the Travel–All. There was testimony, on the other hand, by persons who got a good look and were certain of the vehicles, clearly describing Renton's Travel–All and Cassell's Chrysler. Furthermore, Caves testified that the men traveled about in the Travel–All and Chrysler and that, although she had lived with McLaughlin approximately a year, she did not recall ever seeing his white Ford. Moreover, there is no indication whatsoever as to where Cassell (or his car) was on the night in question if not with the rest of the group.

Cassell also emphasizes that McLaughlin's sister testified that McLaughlin told her he was to blame for the murder and that Cassell was not involved. The government attacked her credibility, however, and left the significance of this testimony in doubt. Moreover, McLaughlin's understanding of who deserved blame might be quite different from the law's assignment of culpability. For example, even if

---

5. Potter knew Cassell by his alias, "Richard Green."

6. A substantial portion of Cassell's brief is devoted to attacking the District Court for analyzing the conviction in a felony murder framework. The District Court unequivocally stated,

however, that it found the evidence sufficient to support Cassell's conviction as an accomplice to a capital murder. Because this is the crime of which Cassell was convicted, it is this crime for which we consider the sufficiency of the evidence.

McLaughlin pulled the trigger of the gun, this would not exculpate Cassell from liability for capital murder as an accomplice.

That the evidence against Cassell was circumstantial does not impugn his conviction. Arkansas law recognizes that the elements of the crime of capital murder may be shown by circumstantial evidence. *See Henry*, 278 Ark. at 485–86, 647 S.W.2d at 424; *Perry v. State*, 277 Ark. 357, 368, 642 S.W.2d 865, 871 (1982). And in our review of the record "circumstantial evidence is to be treated no differently than direct evidence." *Lenza v. Wyrick*, 665 F.2d 804, 812 (8th Cir.1981). Moreover, "the circumstantial evidence need not be conclusive nor prove an absolute impossibility of innocence." *Id.*

We believe that on the evidence presented rational jurors could have concluded that the passenger vehicle at the roadside stop was Cassell's, that Cassell was present, and that rather than abandoning his partners in crime once they abducted Officer Hussey, Cassell facilitated the murder at least by providing the group with a vehicle in which they could make a hasty departure from the rural wooded area that provided cover for the burning of the incriminating Travel–All and the murder of Officer Hussey. Having such a get-away vehicle was crucial to the plot. The jury's implicit finding of premeditation was supported by the fact that Cassell, like the other burglars, had a motive to kill Officer Hussey (*i.e.,* to avoid arrest)[7] and by the fact that the group brought with them to the rural wooded area Officer Hussey's gun. Cassell's conviction is further supported by evidence of his conduct after the murder, including his eagerness to get rid of his Chrysler, his unusual nervousness when he appeared at the home of the used car dealer in Oklahoma City on the morning after Officer Hussey's death, his changing his appearance and obtaining new identification, his admission that he knew he was wanted for murder and if caught would "give up," and his expressed willingness to take blame for the murder. This evidence we find no less substantial than that found sufficient to deny habeas relief in other murder cases requiring similar elements of proof. *See, e.g., Turner v. Armontrout*, 845 F.2d 165, 168 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 315, 102 L.Ed.2d 333 (1988); *Martin v. Foltz*, 773 F.2d 711, 717–18, 720 (6th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986); *Skillern v. Estelle*, 720 F.2d 839, 844 (5th Cir.1983).

While the evidence here may not have been overwhelming, we cannot say that, when viewed in the light most favorable to the prosecution, it was such that a rational jury could not have been persuaded beyond a reasonable doubt that Cassell was an accomplice in the murder of Officer Hussey. We therefore conclude that the evidence was constitutionally sufficient to support Cassell's conviction. Accordingly, the decision of the District Court is affirmed.

---

7. The evidence leaves little doubt that Cassell's group burglarized the Campbell–Bell store. Perhaps Officer Hussey spotted in the Travel–All some of the loot taken from the Campbell–Bell store or perhaps the burglars surmised they had been stopped because of suspected involvement in the burglary.