Rogelio REYES and Basilio Reyes *v.* STATE of Arkansas

CR 96-1385 954 S.W.2d 199

Supreme Court of Arkansas
Opinion delivered September 18, 1997

Thomas Travis, for appellants.

Winston Bryant, Att'y Gen., by: David R. Raupp, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellants Rogelio Reyes and Basilio Reyes appeal from judgments for possession of cocaine with intent to deliver, possession of drug paraphernalia, and possession of marijuana. Rogelio Reyes, as a habitual offender, was sentenced to life in prison, 30 years in prison, and one year in prison, respectively, for each of the convictions plus fines totaling $11,000. Basilio Reyes was sentenced to prison time of 40 years, 10 years, and one year, respectively, for each of his convictions plus fines of $11,000. The trial court ordered all sentences for prison time to run concurrently.

The Reyeses now appeal and assert two grounds: (1) the search of a vehicle at police headquarters was an illegal search and it was error not to suppress the items seized; and (2) it was error for the court not to order the prosecutor to divulge the identity of the confidential informant. We affirm the trial court on both points.

The State's case relied almost exclusively on the testimony of Fort Smith Police Detective Dennis Alexander. Detective Alexander testified that during the early morning hours of April 8, 1995, a warrant was obtained to search Room 28 of the Capri Motel located in Fort Smith. He explained that prior to getting the warrant, a confidential informant engaged in a controlled buy in that room and exchanged marked money for a bag of crack

cocaine. Detective Alexander testified that once the warrant was received, he and Fort Smith Police Detective Wayne Barnett entered Room 28 with the search warrant and found the Reyeses alone in the room.

Detective Alexander testified to several items of contraband found in the motel room, including a bag containing 10 rocks of crack cocaine found in a white sock in the bed's headboard; a bag of powder cocaine found in the same white sock in the bed's headboard; a bag containing marijuana and rolling papers found in a brown sock in the bed's headboard; digital scales and a vinyl case located on the dresser; $590.00 in cash taken from Basilio Reyes's wallet; and $123.00 from the wallet of Rogelio Reyes, which included five marked bills given to the confidential informant. Detective Alexander estimated conservatively that the street value of the seized crack cocaine was about $5,000 and the value of the powder cocaine was about $3,600.

Detective Alexander also testified that he found car keys on the table that were linked to a tan 1987 Ford sedan parked on the motel parking lot near the door of the room. He stated that the confidential informant told him the vehicle belonged to the Reyeses. He testified that upon searching the vehicle, the police officers discovered a box of baking soda in the trunk, while a narcotics dog led them to a large test tube found between the battery and firewall under the car's right front fender. The test tube contained a colored residue later identified as having a cocaine base. The drug paraphernalia and test tube were not tested for fingerprints.

On cross-examination, Detective Alexander admitted that the room was rented by a person named Carl Jones, who was not arrested in connection with the drug offenses. When asked his reason for seizing and searching the Ford sedan, he explained that it was not uncommon to find additional drugs and paraphernalia in automobiles identified under these circumstances because drug dealers rarely keep their entire supply together in case of an encounter with police. Detective Alexander added that the Capri Motel was one of Fort Smith's cheaper motels; that it was located

in a high-crime area of town; and that he had executed many search warrants at that motel in the past.

At the close of the State's case, the Reyeses proffered into the record a subpoena for Carl Jones and Carl Jones's rap sheet, which contained numerous offenses. Basilio Reyes then testified in his own defense through the use of an interpreter. He explained that he and his brother had stopped at a bar in Fort Smith, when a tall man asked them if they wanted to "be with" a woman. They agreed and followed the man to the Capri Motel, where he had a room. The man said that he would go get the woman and some pizza, and Rogelio Reyes gave him $100 for the pizza. The man later returned with pizza and beer but no woman. The man explained he was still trying to get the woman or women. Shortly after he left, according to the testimony, the Fort Smith police officers barged into the room and arrested them.

## I. Sufficiency of the Evidence

█ █ We first consider the Reyeses' argument regarding insufficiency of the evidence because the double-jeopardy clause precludes a second trial when a judgment of conviction is reversed for insufficient evidence. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996); *Jones v. State*, 323 Ark. 655, 916 S.W.2d 736 (1996). The Reyeses argue that the prosecution failed to link them to the contraband found in the motel room. Insufficiency of the evidence is raised at trial by a motion for directed verdict. Counsel for the Reyeses, however, made only a general motion for directed verdict at the close of the State's case and then failed to renew the motion at the close of all the evidence. These lapses make it clear that this point is procedurally barred. *See* Ark. R. Crim. P. 33.1; *Dulaney v. State*, 327 Ark. 30, 937 S.W.2d 162 (1997); *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996); *Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996).

## II. Suppression of Vehicular Search

Prior to trial, the Reyeses moved to suppress the items seized from the Ford sedan because the search occurred without a warrant. At the suppression hearing, Detective Alexander testified

that he employed a first-time confidential informant who told him that the Reyeses were in Fort Smith to distribute cocaine. He testified that when he executed the warrant, he saw the car that had also been described by the confidential informant sitting in the Capri Motel parking lot. After the arrests, the car was removed by police officers from the motel parking lot because it was located in a high-crime area and taken to the Fort Smith Police Department for the search.

On cross-examination, Detective Alexander stated that he was able to connect Rogelio Reyes to the automobile by calling in the license-plate number over the police radio and doing an NCIC search. He admitted that both Reyeses were in custody and incapable of gaining access to their car when it was searched.

### a. Standing.

▮▮ The Reyeses' first task is to prove that they have standing to challenge the legality of the search. This court will not reach a Fourth Amendment argument where a defendant has failed to show that he has an expectation of privacy in the object of the search. See McCoy v. State, 325 Ark. 155, 925 S.W.2d 391 (1996); Littlepage v. State, 314 Ark. 361, 863 S.W.2d 276 (1993). Only Rogelio Reyes was tied to the Ford sedan by Detective Alexander's NCIC search. Basilio Reyes, however, proved no connection with the vehicle, and, therefore, his expectation of privacy is deficient.[1] See, e.g., Dixon v. State, 327 Ark. 105, 937 S.W.2d 642 (1997)(passenger lacked standing to challenge search of pickup truck); McCoy v. State, supra (driver without possessory interest in vehicle lacked standing to challenge its search). We conclude that Basilio Reyes has no standing to challenge the search of the car. The remaining discussion under this point will only apply to Rogelio Reyes.

---

[1] At one point, Basilio Reyes referred to "his car" through an interpreter on cross-examination, but the NCIC search belies this assertion.

## b. Rule 14.1

■ In reviewing the denial of a motion to suppress evidence, this court makes an independent determination based on the totality of the circumstances and reverses only if the decision is clearly contrary to the preponderance of the evidence. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997), *supp. op. denying reh'g*, 327 Ark. 576-A, 940 S.W.2d 440 (1997); *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). This court views the evidence in the light most favorable to the State. *Id.*

■ When police officers conduct a search without a warrant, we begin our review with the basic premise that a warrantless search is unauthorized. *Bohanan v. State*, 324 Ark. 158, 919 S.W.2d 198 (1996); *Cook v. State*, 293 Ark. 103, 732 S.W.2d 462 (1987). However, exceptions to the warrantless search rule have been recognized, including the exigency exception under Rule 14.1 of the Arkansas Rules of Criminal Procedure. Rule 14.1(a) provides in part:

> An officer who has reasonable cause to believe that a moving or readily moveable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is:
>
> (i) on a public way or waters or other area open to the public[.]

Ark. R. Crim. P. 14.1(a).

■ ■ Reasonable cause, as required by Rule 14.1, exists when officers have trustworthy information which rises to more than mere suspicion that the vehicle contains evidence subject to seizure and a person of reasonable caution would be justified in believing an offense has been committed or is being committed. *Bohanan v. State, supra*; *Willett v. State*, 298 Ark. 588, 769 S.W.2d 744 (1989). On these facts, reasonable cause is supported by the following: (1) the Ford sedan was found parked near the motel room to be searched; (2) a large amount of contraband was found in the motel room as were the Reyeses and the car keys; (3) Rogelio Reyes was linked to the car by the confidential informant and

by the NCIC search and had marked bills from the controlled buy on his person; and (4) Detective Alexander asserted that in his experience it was common to find items of contraband in the car of a dealer when the dealer is captured in possession of controlled substances at another location. Based on these facts, it was entirely reasonable for police officers to believe that contraband would also be found in Rogelio Reyes's car.

■ Moreover, we have no doubt that the car was parked in an "area open to the public," as Rule 14.1 requires, since it was on the motel parking lot. *Compare Haygood v. State*, 34 Ark. App. 161, 807 S.W.2d 470 (1991)(holding that the parking lot of an apartment complex was an area open to the public even though the apartment complex was privately owned).

■ The remaining question is whether the Ford sedan was "moving or readily movable," so as to qualify for the Rule 14.1 exception. This court has observed, as has the United States Supreme Court, that an automobile does not enjoy the same constitutional protection a home does because of an automobile's mobility and because one does not have the same expectation of privacy in an automobile. *Vinston v. State*, 274 Ark. 452, 625 S.W.2d 533 (1981), *cert. denied*, 459 U.S. 833 (1982), *citing Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925). In this same vein, we held in *Bohanan v. State, supra,* that a vehicle located on a street was readily movable despite the fact that the car had a flat tire, the rationale being that the tire could have been changed in a matter of minutes. *See Bohanan v. State, supra.*

■ In the instant case, it is uncontroverted that the Reyeses were in custody at the time the vehicle was removed to the police department. The State argues, however, that the threat the car would be removed by a third party still existed. We agree. We reached the same conclusion in *Vinston v. State, supra,* when we said:

> The seizure of a vehicle is justified when confederates or others might remove a vehicle. *U.S. v. 1972 Chevrolet Nova*, 560 F.2d 464 (1st Cir. 1977); *See* W. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, § 11.3 (1980).

274 Ark. at 456, 625 S.W.2d at 536.

We are further aware of the fact that the United States Supreme Court recently reversed the Pennsylvania Supreme Court in two cases on this very issue. *See Pennsylvania v. Labron*, 116 S. Ct. 2485 (1996)(per curiam), *rev'g Com. v. Kilgore*, 677 A.2d 311 (Pa. 1995); *Com. v. Labron*, 669 A.2d 917 (Pa. 1995). In *Labron*, the respondent was arrested after police officers saw him sell narcotics taken from the trunk of a car parked on a public street. The Pennsylvania Supreme Court determined that the subsequent search of the trunk was unlawful because the vehicle was stationary and was not supported by exigent circumstances. In *Kilgore*, a confidential informant gave respondent's accomplice money for drugs in a parking lot. The accomplice drove to a farmhouse and obtained the drugs from Kilgore. Once the delivery occurred, the police arrested Kilgore and searched his truck, which was parked in the driveway of the farmhouse, and found cocaine. The Pennsylvania Supreme Court again determined that no exigent circumstances existed.

The Supreme Court, however, reversed and explained:

> If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more. As the state courts found, there was probable cause in both of these cases: Police had seen respondent Labron put drugs in the trunk of the car they searched, and had seen respondent Kilgore act in ways that suggested he had drugs in his truck. We conclude the searches of the automobiles in these cases did not violate the Fourth Amendment.

*Pennsylvania v. Labron*, 116 S. Ct. at 2487 (internal citation omitted). In both of these cases, the cars were parked and the vehicles were searched *after* those accused were placed under arrest. Thus, the ability of the defendant to move the car was not the pivotal factor. Indeed, in *Kilgore* the *suggestion* that drugs were in the truck was enough to satisfy probable cause.

The weight of authority appears to support the conclusion that an exigent circumstance exists when a car is readily

movable by any person and not just the defendant. *See United States v. Brazel,* 102 F.3d 1120 (11th Cir. 1997); *United States v. Sinisterra,* 77 F.3d 101 (5th Cir. 1996); *United States v. Reed,* 26 F.3d 523 (5th Cir. 1994), *cert denied,* 115 S. Ct. 1116 (1995); *People v. Lee,* 914 P.2d 441 (Colo. App. 1995); *Jones v. State,* 681 A.2d 1190 (Md. App. 1996); *Reyes v. State,* 910 S.W.2d 585 (Tex. App. 1995). *But see State v. Harnisch,* 931 P.2d 1359 (Nev. 1997). Two state appellate courts looked, in addition, to factors such as location of the car in a high-crime area, potential for theft, and potential movement by family or friends as important considerations in determining exigency. *See People v. Lee, supra; Reyes v. State, supra.*

Likewise, in the case at hand the Reyes brothers could not have moved the car because they were in custody. But that is not to say that a third party, either a confederate or thief, could not have done so. The car sat in the parking lot of a motel in a high-crime area during the early morning hours. The fact of the Reyeses' arrest would certainly have been known to people at the motel. Under such circumstances, for the police to have left the vehicle unattended would have been foolhardy. Moreover, a search warrant for the motel room had been obtained and executed. For one officer to have watched the car while another officer obtained a second search warrant directed at the car, given these facts, appears unnecessary and impractical. *See Chambers v. Maroney, supra.* We decline to hold that the trial court erred in refusing to suppress the test tube and baking soda taken from the car.

### III. Identity of the Confidential Informant

Prior to trial, the Reyeses moved the trial court to require disclosure of the name and address of the confidential informant used for the controlled buy because this knowledge was essential to the preparation of an adequate defense. The trial court took the motion under advisement and asked for briefs. No ruling was made.

At trial, defense counsel in opening statement referred to the "frame job" by the confidential informant who had rented the

room. He then renewed his motion during his cross-examination of Detective Alexander. When counsel began asking Detective Alexander about Carl Jones's involvement in the crime, the prosecution objected to any questions pertaining to whether he was the confidential informant. The record reflects the following colloquy in a sidebar conference:

> PROSECUTOR: I think the Officer is going to state in response to that question that the investigation determined it was not Carl Jones' cocaine, and that he had denied that he had placed the cocaine in there. We have no objections to that question being asked and being answered like that, but I do not want to get into a rule 509 issue about his actual identity, the informant, so with the Court's permission, with the defense being present, I'd like to go over and tell the officer to answer that question with a truthful answer, that they did interview him and that he denied that he'd placed the cocaine.

> DEFENSE COUNSEL: I have no doubt he denied it.

> THE COURT: I'm going to let you ask him, but I want you to stay away from this confidential aspect, but you can ask him.

> DEFENSE COUNSEL: Then, I would like to renew my motion for disclosure of confidential informant. This has very great bearing on the defense of my clients. I'd like to renew my motion.

> PROSECUTOR: I'm going to let him ask questions, and there'll be honest answers, but I'm not going to let him get in to reveal who the informant is.

> THE COURT: O.K., go ahead.

The motion to disclose was never made again.

The first question presented is whether this point is barred from appellate review. It is blackletter law that the appealing party must obtain a ruling in order to preserve an argument for appeal and that the failure to do so constitutes a waiver of the issue. *See, e.g., Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997); *Burton v. State*, 327 Ark. 65, 937 S.W.2d 634 (1997). We conclude that while the trial court's ruling could have been more

552

precise, the issue before the trial court was obvious, and the trial court decided it adversely to the Reyeses.

 Turning to the merits, we discussed the confidential informant privilege in *Hill v. State*, 314 Ark. 275, 280, 862 S.W.2d 836, 839 (1993):

> [D]isclosure shall not be required of an informant's identity where his identity is a prosecution secret, and a failure to disclose will not infringe upon the constitutional rights of the defendant. *Rovario v. United States*, 353 U.S. 53 (1957). "When the disclosure of the informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 61-62. In determining whether the privilege shall prevail, the trial court must balance the public interest in getting needed information against the individual's right to assert a defense. The trial court must consider the crime charged, the possible defenses, the significance of the informant's testimony, and any "other relevant factors." *Id.* at 61. The burden is upon the defendant to show that the informant's testimony is essential to his defense. *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973).

*Id.* *See also* Ark. R. Crim. P. 17.5(b); Ark. R. Evid. 509.

 This court has held repeatedly that trial courts do not abuse their discretion in denying requests to reveal the identity of a confidential informant when the defendant is merely charged with possession of a controlled substance, and when the informant's involvement supplied only a lead to the officers and provided information leading to the issuance of a search warrant. *See, e.g., Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994); *Sanchez v. State*, 288 Ark. 513, 707 S.W.2d 310 (1986); *Toland v. State*, 285 Ark. 415, 688 S.W.2d 718 (1985), *cert. denied*, 474 U.S. 945 (1985); *Jackson v. State*, 283 Ark. 301, 675 S.W.2d 820 (1984); *Robillard v. State*, 263 Ark. 666, 566 S.W.2d 735 (1978); *Brothers v. State*, 261 Ark. 64, 546 S.W.2d 715 (1977).

In the case before us, the Reyeses were not charged with delivery of a controlled substance which would have directly involved the confidential informant who bought the cocaine with marked bills, but only with possession with intent to deliver.

Hence, the confidential informant did not directly participate in the crime though his involvement led to the search warrant. Still, the Reyeses maintain that knowing the identity of the confidential informant was essential to their defense that Carl Jones, who had reserved Room 28, had framed them.

The facts in *Hill v. State, supra,* are instructive. There, Hill was charged with manufacturing or possessing with intent to manufacture a controlled substance. Hill's defense was that he was entrapped by an individual named Ronnie Prescott, who purportedly offered him $10,000 to manufacture an illegal chemical and who, he suspected, was the confidential informant. Evidence elicited at trial from law enforcement officers proved that Prescott was working generally for them as an informant though that work was never tied specifically to the Hill case. The trial court declined to order the prosecution to reveal the name of the confidential informant, and this court concluded as follows:

> In sum, the trial court's rulings regarding disclosure of whomever might have been the informant were correct. However, the ruling was in error when appellant's counsel limited the request to disclosure of whether Ronnie Prescott was the informant and it had already been shown that disclosure might be a substantial factor in his defense.

*Hill v. State,* 314 Ark. at 281, 862 S.W.2d at 839.

The case at hand is distinguishable from *Hill v. State, supra,* in that the proper motion was never made by the defense. Here, there was evidence before the jury that Carl Jones reserved Room 28 in his name and the testimony by Basilio Reyes indicating that the "tall man" had orchestrated the brothers' arrest. Indeed, defense counsel argued to the jury that Carl Jones was the true culprit in all of this. We have some doubts that additional evidence establishing Carl Jones as the confidential informant was a substantial factor in the Reyeses' defense when possession of contraband with intent to deliver was the charge. But, more importantly, the Reyeses failed to move for disclosure that Carl Jones was the confidential informant. This they were required to do under *Hill v. State, supra.* Because the proper motion was never made, we find no error by the trial court on this point.

With regard to Rogelio Reyes, the record has been reviewed pursuant to S. Ct. Rule 4-3(h) for other reversal error, and none has been found.

Affirmed.

GLAZE, J., joins in the opinion but concurs on point III.