Larron Clark McDANIEL *v.* STATE of Arkansas

CA CR 98-237 985 S.W.2d 320

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered January 27, 1999

*Paul Petty*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this criminal case was the driver of a pickup truck that was stopped for a traffic violation outside Damascus, Arkansas, on April 26, 1997, at 1:00 a.m. A police officer testified that, when he approached the vehicle, he smelled a strong odor of marijuana. Methamphetamine was found on the passenger in appellant's vehicle. The cab of the pickup truck was searched, but no marijuana was found. A search of a toolbox in the bed of the pickup truck revealed a briefcase with marijuana residue, and a small locked box containing methamphetamine and drug paraphernalia. Appellant was arrested and charged with possession of methamphetamine with intent to deliver, possession of marijuana, and possession of drug paraphernalia. He filed a motion to suppress the evidence obtained in the search; after a hearing, the motion was denied on November 17, 1997. He subsequently entered a guilty plea conditioned on his right to appeal the adverse determination of the pretrial motion to suppress, and was sentenced to 120 months in the Arkansas Department of Correction with 60 months suspended. This appeal is from the denial of his motion to suppress the evidence found in the search.

For reversal, appellant contends that the trial court erred in finding that the police officers had probable cause to search the locked toolboxes and briefcase in the bed of his pickup truck

based solely on the officer's testimony that he smelled marijuana. We affirm.

 In reviewing the denial of a motion to suppress evidence, we make an independent examination based upon the totality of the circumstances and reverse only if the decision is clearly against the preponderance of the evidence. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997). A warrantless search of an automobile is justified where there is probable cause plus exigent circumstances. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Lopez v. State*, 29 Ark. App. 145, 778 S.W.2d 641 (1989). Rule 14.1(a) of the Arkansas Rules of Criminal Procedure provides in part:

> An officer who has reasonable cause to believe that a moving or readily moveable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is:
>
> (i) on a public way or waters or other area open to the public[.]

 Both factors are present in the case at bar. With respect to probable cause, there was evidence that the police officer smelled a strong odor of marijuana when he stopped the truck. This gave rise to probable cause to search under *Brunson v. State, supra*, where the supreme court stated that:

> Quite simply, the smell of the marijuana or its smoke emanating from a vehicle constitutes facts and circumstances sufficient to warrant a person of reasonable caution to believe that a controlled substance has been or is being possessed or delivered or both, and, thus, that a violation of law has occurred or is occurring.
>
> Courts in this state have held that the smell of marijuana or its smoke emanating from a vehicle gives rise to reasonable suspicion to detain the occupants to determine the lawfulness of their conduct, *Phillips v. State,* 53 Ark. App. 36, 918 S.W.2d 721 (1996), to search the vehicle, *Lopez v. State,* 29 Ark. App. 145, 778 S.W.2d 641 (1989) (*citing Gordon v. State,* 259 Ark. 134, 529

S.W.2d 330 (1976), *cert. denied*, 434 U.S. 929 (1977)), and to arrest some or all of its occupants, depending upon the particular circumstances, *Crail [v. State]*, 309 Ark. 120, 827 S.W.2d 157 [(1992)].

*Brunson v. State*, 327 Ark. at 571, 940 S.W.2d at 441-42. *Brunson* very clearly holds that the odor of marijuana, by itself, gives rise to probable cause to search a vehicle. The police officers therefore had probable cause to search in the case at bar.

■ With respect to exigent circumstances, the record shows that the appellant's vehicle was stopped on a rural road at 1:00 in the morning. The mobility of a vehicle in itself gives rise to a degree of exigency, even when the driver and passenger have been taken into custody. In *Reyes v. State*, 329 Ark. 539, 954 S.W.2d 199 (1997), the supreme court found exigent circumstances justifying the warrantless search of a vehicle for drugs after the driver had been taken into custody, reasoning that the contraband the vehicle was suspected to contain could otherwise have been removed by a third party, or even by a thief. Although the vehicle searched in *Reyes* was located in an urban motel parking lot, while the vehicle in the case at bar was on a rural road at 1:00 in the morning, we think that the risk of the contraband being removed was at least equally great in the case at bar.

■ Given the presence of probable cause and exigent circumstances, we hold that the trial court did not err in denying appellant's motion to suppress the evidence found in the search of his vehicle.[1]

---

[1] The dissenting judge's arguments for reversal are based primarily on two cases: *Knowles v. Iowa*, 119 S.Ct. 484 (1998), and *Scisney v. State*, 270 Ark. 610, 605 S.W.2d 451 (1980). Neither is applicable here.

In *Knowles, supra*, the Court held that the Fourth Amendment does not permit a police officer to conduct a full search of a vehicle stopped for speeding where the driver was not arrested and there was no probable cause to search. Although this appears to be a wise and laudable precedent, it has no application to the case now before this court, where there *was* probable cause to search. *See Brunson v. State, supra*.

With regard to *Scisney, supra*, the dissenting judge professes an inability to understand how the mere odor of smoked marijuana can provide probable cause to search the toolbox in the case at bar when, in *Scisney*, the discovery of actual contraband in the passenger compartment did not constitute probable cause for searching a locked trunk and sealed suitcases in Scisney's vehicle. The explanation, of course, is that the law has changed in the

ROBBINS, C.J., and BIRD, STROUD, and NEAL, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and remand appellant's conviction and sentence pursuant to the decision of the United States Supreme Court in *Knowles v. Iowa*, 119 S.Ct. 484 (1998), and the decision of our supreme court in *Scisney v. State*, 270 Ark. 610, 605 S.W.2d 451 (1980). In *Knowles*, the Supreme Court invalidated a warrantless search of a car after a police officer stopped a motorist and issued a speeding citation. In *Scisney*, our supreme court held that discovery of several marijuana cigarettes in the passenger compartment of a vehicle did not supply probable cause for searching two old suitcases that were sealed by masking tape in the locked trunk of the car. The supreme court also held that discovery of those marijuana cigarettes did not provide the basis for a reasonable belief required for such a search by Rule 12.4 of the Arkansas Rules of Criminal Procedure.

Appellant was stopped for a traffic violation by Officer Tony Hartwick, a police officer in Damascus who was on patrol duty when he saw the truck that appellant was driving cross the center line for a substantial distance. Hartwick testified that he smelled the odor of smoked marijuana, but he found no evidence of marijuana when he looked in the vehicle. Appellant denied that he had been drinking or partaking of drugs, and Hartwick testified at the suppression hearing, "I believed him." Hartwick's abstracted testimony on cross-examination continued:

---

nearly two decades since *Scisney* was decided. At the time of the *Scisney* decision in 1980, it was believed that a warrantless search of a container found in an automobile could never be sustained as part of a warrantless search of the automobile itself. *See United States v. Ross*, 456 U.S. 798 (1982). The decision in *Scisney* was based on that understanding of the law. Two years later, however, the United States Supreme Court overruled prior decisions regarding the scope of the automobile exception where closed containers are present in the automobile to be searched, and held that, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Ross, supra*. Therefore, although it is true that *Scisney* conflicts in certain particulars with the modern cases cited in this opinion, the modern cases are controlling.

I was going to further my investigation for narcotics at that point because I could smell marijuana. Mr. McDaniel was nervous and I could smell marijuana. Most people are probably nervous when I stop them at one o'clock in the morning. My investigation was that I was going to search this truck for drugs. That is not the policy of the Damascus Police Department or my policy. I was going to search the truck because of Mr. McDaniel's nervousness and the smell of marijuana.

*I started pilfering around inside the truck, but at that point I did not find anything. I did not ever find anything in the passenger compartment of the truck that had anything to do with drugs.* I searched inside the truck with verbal consent.

Officer McNew got the passenger out for officer safety while I searched the vehicle. All he was doing was removing the passenger from the vehicle so I could search. The driver and the passenger had not given me any reason to believe they had weapons. They had not been a threat to me. They had not been drinking and they were not obnoxious or verbally threatening. *I patted the driver down for weapons, but did not find any. The driver also said there were no weapons in the vehicle. I did not find anything in the vehicle.*

*I decided to search the locked compartment of the toolbox after Officer McNew found contraband on Mr. McAdams, the passenger. I intended to search the toolbox anyway. I was going to search it for weapons, stolen merchandise, or drugs.* I asked Mr. McDaniel if he cared if I searched the locked toolbox. I had tried to open it and discovered it was locked. Mr. McDaniel told me where the key was. I got the keys and handed the key ring to him and he picked out the key to the toolbox and handed it to me.

*Mr. McDaniel showed me the key to the toolbox after Mr. McAdams had been arrested by Officer McNew. I did not realize at the time I started to look in the toolbox that it was locked, but I usually look in toolboxes. I was going to search it, regardless of whether the passenger was detained.* I had nothing to do with the pat-down of Mr. McAdams and did not see it. I did not know anything about it. *I just saw what the officer brought over to show me he had found. I continued to search the vehicle and Officer McNew opened the silver box which was inside the tool box. There was a locked toolbox and then another locked box inside that toolbox.*

*I did not find any drugs on Mr. McDaniel. I asked who owned the contents of the toolbox and Mr. McDaniel said he did. The only drugs*

*found before the search of the box inside the toolbox were the drugs on the person of Mr. McAdams, the passenger.* (Emphasis added.)

Officer Brad McNew was working for the Damascus Police Department with Hartwick the night of April 26, 1997. Part of his abstracted testimony at the suppression hearing deserves study.

*After Officer Hartwick stopped the vehicle, he asked the driver to step out and he advised me that he could smell marijuana. Officer Hartwick patted the driver down for safety and then asked for consent to search his vehicle. Mr. McDaniel said he did not care for us to look.* Officer Hartwick asked me to get the passenger out and I did and patted him down for officer safety.

[CROSS-EXAMINATION TESTIMONY] *Officer Hartwick asked the driver, Mr. McDaniel, for consent to search inside the vehicle. Mr. McDaniel said he did not care for us to look. Damascus did not use consent forms. We use them in Beebe. I never knew of any consent forms at the Damascus Police Department. I never used consent forms when I was employed there.*

*Officer Hartwick asked me to get the passenger out and I did. Officer Hartwick was going to search the inside of the vehicle. I patted the passenger down for officer safety. I wanted to make sure the passenger didn't have any knives, guns, or other weapons on him. The passenger was not intoxicated. He had not been a threat or verbally abusive. He had not done anything threatening. I had not been told there were any weapons. I patted him down for officer safety, although I did not feel threatened at that time.*

When I patted the passenger down, I felt something in his left front pocket. I asked him what it was and he said "keys." He pulled the keys out. *I then patted him again and felt something else in his pocket. It was obviously not a weapon. I reached into his pocket and took that item out, after I knew that it wasn't a weapon. After I got it out, I could clearly see that it wasn't a weapon. I did not give it back to him because there was nothing in it and he had stated that he didn't know that he had anything in his pocket. I was not threatened by the item. I did not give it back to the passenger because I thought there might be contraband inside of it, based on experience. The item was a Tylenol tube. It was obviously not a weapon. I shook it and I thought there wasn't anything in it. Then, I opened it. I have heard of United States v. Terry [sic], and I know about the Terry pat-down.* I am sup-

posed to stop the pat-down when I discover there aren't any weapons. My search did not stop there, however.

I arrested the passenger, Mr. McNew and put him in the patrol car. Then, I went back to the vehicle to show Officer Hartwick what I had found during the pat-down.

*I believe that when I came back from reading Mr. McNew his rights, the great big toolbox on the back of the truck was open. The toolbox was open when I reached the truck and Officer Hartwick was searching inside the briefcase. I did not see Officer Hartwick get a signed consent to open the toolbox. I have never seen Officer Hartwick use a consent to search form at Damascus. I did not hear Officer Hartwick ask Mr. McDaniel if he could open the toolbox. I was back at the patrol car reading rights and talking with Mr. McAdams.*

*I went through the little toolbox. It was also locked. By that time, both gentlemen were under arrest. It would have been easy to impound the vehicle. That is what we normally do. I guess we could have gotten a search warrant.*

Mr. McDaniel was standing at the rear of the vehicle while we were going through the toolbox. *When we were going through the big toolbox which was locked and the little toolbox which was locked, Mr. McDaniel had not been put under arrest, yet. Mr. McDaniel was going to be arrested, though, after Officer Hartwick found the marijuana in the briefcase. I did not get written or verbal consent to open the little toolbox. I just asked Mr. McDaniel if he had a key and he said yes and gave me the key. I handed Mr. McDaniel a ring of keys from inside the truck, I assume. I found a bunch of keys and asked him which one it was. I asked him what was in the box and he said tools, but it was not heavy enough. The box was locked, so I asked Mr. McDaniel, the driver, if he had a key to the box and he said he did. He showed me which key it was. I did not ask him if I could look into the box.*

(Emphasis added.) Hartwick and McNew were the only witnesses at the suppression hearing so their testimony constitutes the evidence from which we are, on appellate review, to determine if the totality of the circumstances demonstrate that the trial court's ruling on appellant's suppression motion is clearly against the preponderance of the evidence. *See Hale v. State*, 61 Ark. App. 105, 968 S.W.2d 627 (1998).

In *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), our supreme court explained that there are three types of encounters between the police and private citizens. The first and least intrusive encounter is when an officer merely approaches an individual on a street and asks if he is willing to answer a question. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have a "reasonable suspicion" that the person has committed or is about to commit a crime. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id.* Rule 3.1 of the Arkansas Rules of Criminal Procedure provides that a law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. In this context, a "reasonable suspicion" has been defined as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Id.*

Rule 12.1 of the Arkansas Rules of Criminal Procedure provides that an officer who is making *a lawful arrest* may, without a search warrant, conduct a search of the person or property of the accused for *only* the following purposes: (1) to protect the officer, the accused, or others; (2) to prevent the escape of the accused; (3) to furnish appropriate custodial care if the accused is jailed; or (4) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the crime. *Id.* Rule 12.4 of the Arkansas Rules of Criminal Procedure provides that if, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he

is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search. The search of a vehicle pursuant to Rule 12.4 shall only, however, be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

I cannot agree with the majority that probable cause existed for McDaniel's lawful arrest based upon this record. It is clear to me and was admitted by Officer McNew that there was no basis for arresting McDaniel until illegal drugs were found in the locked toolboxes. Although Officer Hardwick testified that McDaniel consented to a search of his vehicle and the toolboxes, Officer McNew plainly testified otherwise. There is no written consent form in the record to corroborate Hardwick's position that McDaniel consented to his vehicle being searched.

It is also clear that neither officer found evidence in the cab of appellant's truck that suggested that marijuana had been smoked. This is important because Hardwick's claim that he smelled the odor of burned marijuana is the only basis asserted by the State for detaining McDaniel aside from the fact that Hardwick had seen McDaniel's truck cross the center line. Hardwick and McNew testified that they found no evidence of drugs, alcohol, or other contraband in the passenger compartment of the truck to corroborate Hardwick's suspicion that marijuana had been smoked. That non-discovery certainly should not be deemed probable cause for McDaniel's arrest.

The supreme court held in *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997), that smell of marijuana or its smoke emanating from a vehicle gives rise to a reasonable suspicion to detain the occupants of a vehicle to determine the lawfulness of their conduct, search the vehicle, and to arrest some or all of the occupants. Yet *Scisney v. State, supra,* shows that even discovery of actual marijuana cigarettes in a vehicle does not constitute probable cause for searching sealed containers where no exigent cir-

cumstances are shown. Rather than assume that *Scisney* has been tacitly overruled by *Brunson*, I would reverse the trial court's denial of McDaniel's motion to suppress pursuant to *Scisney* because the cases are distinguishable.

This approach is superior to simple reliance upon *Brunson* for several reasons. Factually, this case is much more analogous to *Scisney* than to *Brunson*. Granted, *Brunson* involved testimony by the arresting officer that he smelled the odor of marijuana when he approached a vehicle that he stopped for broadcasting loud music in apparent violation of a noise ordinance. However, the contraband discovered in *Brunson* was found during a pat-down search of the appellant, not a search of the stopped vehicle and the arrest of its driver. Had the contraband in this case been discovered during a pat-down of McDaniel, then *Brunson* might be controlling authority. But the contraband involved in McDaniel's suppression motion had nothing to do with his pat-down search, nor did it involve anything seized from his passenger (McAdams). Simply put, unlike *Brunson*, this case involves seizure of drugs from locked toolboxes located in the cargo compartment of a truck, and the opening of a sealed briefcase; not confiscation of drugs during a pat-down search for weapons. In fact, the *Brunson* majority opinion states: "There is no evidence . . . that the vehicle was searched in this case, and we have not analyzed the search of Appellant's person as incident to a vehicular search." *Id.* 327 Ark. 573.

By contrast, *Scisney* involved a vehicular search. As in this case, the initial police encounter with the appellant was triggered by a traffic violation. While there was no odor of marijuana in *Scisney*, the state trooper who arrested that appellant, like the police in this case, conducted a search of the passenger compartment of the vehicle (for weapons). The trooper found no weapons; however, he found several hand-rolled marijuana cigarettes in two separate places. Based on that discovery, the trooper searched the rest of the vehicle. After taking the keys from the ignition and without obtaining consent from the appellant, the trooper opened the automobile trunk and discovered two suitcases that he described as being "very old" and "secured by masking tape." The trooper removed the masking tape, opened the suitcases, and

found 27 bricks of what was later determined to be marijuana. The only issue involved in the appeal was "whether the warrantless search of the suitcases found in the trunk of appellant's automobile was violative of the Fourth Amendment to the United States Constitution."

Writing for the unanimous court in *Scisney*, then Justice Stroud noted:

> [H]ere there was no tip or other information to give the trooper probable cause to believe that marijuana was located *in the trunk of the automobile. Certainly, several marijuana cigarettes found in the passenger compartment of the vehicle do not supply the probable cause required for a search of two sealed suitcases in the locked trunk of the car, nor do they provide the reasonable belief required for such a search by Rule 12.4 of the Arkansas Rules of Criminal Procedure.* It is also significant that appellant and his companion had been removed from the vehicle and there simply were no exigent circumstances, as the vehicle was already under the complete control of the troopers. Certainly, appellant would not be allowed to drive the vehicle to the station while under arrest for D.W.I., and, in fact, the vehicle was towed to the police station by a wrecker. *There was ample opportunity for the troopers to obtain a search warrant to search the trunk and suitcases after the vehicle was impounded, and in this case it was unreasonable and reversible error not to have done so.*

*Id.* at 614 (emphasis added). If the discovery of actual contraband in the passenger compartment did not constitute probable cause for searching a locked trunk and sealed suitcases found in it in *Scisney*, I do not understand why non-discovery of contraband — in this case non-discovery of smoked marijuana that Officer Hardwick claims to have smelled when he approached the cab of appellant's truck — can somehow be deemed probable cause for searching elsewhere and opening and rummaging through locked toolboxes and closed briefcases.

Another aspect of the present case, different from the facts in *Scisney*, demonstrates the very evils that the Fourth Amendment was intended to prevent. Here the police found nothing in the cab of the truck that supported Hardwick's suspicion that marijuana had been smoked. Lacking any indication that either McDaniel or his passenger had engaged in any threatening con-

duct or presented an armed and dangerous threat, Hardwick and McNew conducted pat-down searches of them anyway. During the pat-down of McAdams — *the passenger* — McNew found a container that he admitted was neither threatening nor a weapon, but which he opened nonetheless and discovered what he believed was methamphetamine. Thus, the fact that the police found methamphetamine — over which even the State does not argue that McDaniel exercised control — during a pat-down search of McDaniel's passenger is now used to justify arresting McDaniel and searching his property although no contraband was found on McDaniel in a similar pat-down search or had been found in his vehicle to that point.[1]

The majority relies upon Arkansas Rule of Criminal Procedure 14.1(a) and the holding in *Reyes v. State*, 329 Ark. 539, 954 S.W.2d 199 (1997), to affirm the trial court's denial of McDaniel's suppression motion. Rule 14.1(a) provides that an officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is on a public way or waters or other area open to the public. *Reyes v. State* involved a vehicular search at police headquarters of a vehicle found at a motel where the police seized drugs and drug paraphernalia from a motel room occupied by the appellants (two brothers) pursuant to a search warrant based on a tip from a confidential informant.

---

[1] I question whether the pat-down searches of McDaniel or his passenger were valid under the Fourth Amendment, based on the decisions of the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968); *Ybarra v. Illinois*, 444 U.S. 85 (1979); *Sibron v. New York*, 392 U. S. 41 (1968); the decision of our court in *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985); our recent decision in *Pettigrew v. State*, CACR 98-695, (December 23, 1998); and Rule 3.4 of the Arkansas Rules of Criminal Procedure. It is plain that neither of the police officers who conducted the pat-down searches had specific and articulable facts from which it could reasonably be inferred that their subjects were armed and presently dangerous. However, the validity of the pat-down searches is not before us in this appeal. It does not appear to have been raised below. Therefore, my disagreement with the majority does not arise from my concern about the validity of the pat-down searches.

But in the present case the police obtained no search warrant. Even the search of the cab of McDaniel's vehicle produced nothing to substantiate Hardwick's suspicion that marijuana was in it. Unlike in *Reyes*, neither contraband nor the fruit of illegal drug dealing was found on McDaniel before his toolboxes were unlocked and searched, and the contraband taken from his passenger was not associated with him either by ownership or control. Reasonable cause for the warrantless vehicular search in *Reyes* was established because (1) the vehicle was found parked near the motel room to be searched pursuant to the warrant; (2) the appellants in *Reyes* were found in the motel room with a large quantity of contraband and the keys to the vehicle; (3) one of the appellants had been linked to the vehicle by a confidential informant and by an NCIC inquiry, and he was carrying marked bills from a controlled drug buy on his person; and (4) a detective testified that it was his common experience to find contraband in a drug dealer's car when the dealer is captured elsewhere in possession of controlled substances. None of these factors was involved in the present case. I do not understand how discovery of drugs and drug paraphernalia pursuant to a search warrant can be reasoned to authorize the warrantless search of a vehicle after the police fail to discover contraband in it or on its driver.

Had the police wanted to conduct a search consistent with the liberty and privacy interests protected by the Fourth Amendment, they could have impounded McDaniel's vehicle and sought a search warrant based on Hardwick's assertion that he smelled the odor of burned marijuana and the fact that contraband believed to be methamphetamine was seized from McDaniel's passenger. McNew admitted that they could have easily impounded the truck and sought a search warrant. Instead of doing so, however, the police rummaged through McDaniel's property as if they had either probable cause or a search warrant. They plainly had neither.

If the police conduct a warrantless search of the personal locked possessions of one person based upon the seizure of contraband taken from another person, the Fourth Amendment requires that probable cause exist for doing so. Probable cause did not exist to search McDaniel's locked toolboxes in the cargo compartment

of his truck merely because Hardwick thought he smelled marijuana smoke but found no evidence of burned marijuana when he searched the truck cab, the one place where reasonable minds would expect to find it. And probable cause to search the toolboxes did not arise when the police found methamphetamine during the pat-down search of McDaniel's passenger where there was no indication that McDaniel had anything to do with the methamphetamine or the passenger had anything to do with the toolboxes. Neither the State nor the majority cite authority holding that the arrest of A constitutes probable cause for searching the separate property of B as incident to that arrest. Probable cause to arrest McDaniel and search his vehicle incident to that arrest simply did not arise from the fact of his passenger's arrest or anything else that transpired before the toolboxes were searched pursuant to Hardwick's "pilfering."

The State argues and the majority opinion maintains that the officers needed to search the toolboxes because Hardwick had smelled the odor of marijuana, drugs had been found on his passenger, and there was no other means of preserving the vehicle in the middle of the night than by conducting a search. That circular argument and reasoning is patently flawed. It admits that the police lacked probable cause to arrest McDaniel until they found contraband, but asserts that they were authorized to conduct a warrantless search without probable cause until they found something that gave them probable cause to arrest him and justify the search incident to his arrest.

The police had no right to arrest McDaniel for anything but a traffic violation even though they found what they considered methamphetamine during the pat-down search of his passenger. But the Supreme Court's holding in *Knowles, supra* — that probable cause to undertake a full search of a vehicle does not arise from issuance of a traffic citation — shows that the police had no constitutional basis for taking McDaniel's keys, unlocking his toolboxes, and rummaging through them merely because he had driven to the left of the center line.

The *Knowles* holding plainly overrules the 4-3 decision of our supreme court in *State v. Earl*, 333 Ark. 489, 970 S.W.2d 789

(1998), a decision in an interlocutory appeal which reversed a trial court decision that granted a motion to suppress evidence of crack cocaine seized from the cab of the appellant's truck in a search conducted after appellant had been stopped for running a stop sign. The majority opinion in *State v. Earl* cited the Iowa Supreme Court's decision in *State v. Knowles*, 569 N.W.2d 601 (Iowa 1997), with approval. The Supreme Court had granted certiorari in *Knowles* when *State v. Earl* was decided, but its decision in *Knowles* was not issued until last month. I see no reason why our court should decide the present case as if *State v. Earl* remains good law when the United States Supreme Court has plainly indicated otherwise in a unanimous decision that invalidated the very ground on which the *State v. Earl* holding was erected. If the practical effect of this reasoning permits persons in appellant's situation to drive away with a mere traffic citation, then the police should accept that reality because the Fourth Amendment to the Constitution of the United States and our love of liberty and privacy command it. The Fourth Amendment governs the scope of investigatory zeal; investigatory zeal does not determine the scope of the liberty and privacy rights guaranteed by the Amendment.

It is self-evident that if the police search every vehicle they stop and want to search — whether they have probable cause to do so or not — they will find more illegal drugs and other contraband than if they do not. It is equally self-evident that the Fourth Amendment prohibits such governmental invasion of personal privacy and interference with personal liberty. As we have stated, the Fourth Amendment protects the right of people to be secure in their persons, papers, and effects against unreasonable searches and seizures. *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985).

Judging from the behavior of Hardwick and McNew, the State's position, and the majority opinion today, the professed "war" on illegal drugs has become a "war" on personal liberty and privacy so that any means used by the police to ferret out drugs — even pilfering without a lawful arrest, without a search warrant, or without probable cause to make an arrest or conduct a search — are deemed justified. The Fourth Amendment does not contemplate a police war on personal liberty and privacy as the necessary

price that a free society must pay to be protected from illegal drugs, let alone a worthwhile price.

I respectfully dissent.